James SCROGGINS et al., Appellants,

v.

Opal ROPER, Appellee.

No. 993.

Court of Civil Appeals of Texas, Tyler.

March 3, 1977.

Frank B. Murchison, Paxton, Whitaker & Parsons, Palestine, for appellants.

Richard L. Stone, Stone & Stone, Jacksonville, for appellee.

MOORE, Justice.

This is a forcible entry and detainer action. Plaintiffs, James Scroggins and wife, Mrs. James Scroggins, instituted suit against defendant, Opal Roper, seeking to oust her of possession of certain real property known as Lake Trail Restaurant in Frankston, Texas. They alleged that at the time they purchased the property from Mrs. D. J. Tarrant on April 4, 1975, defendant Opal Roper was in possession as a month-to-month tenant of Mrs. Tarrant, and that although they had requested her to vacate the premises, she refused, and continues to refuse to deliver possession to the plaintiffs. Defendant, Opal Roper, answered with a general denial and by way of a defense alleged that she was holding by virtue of a five year written lease, dated June 1, 1972, executed by plaintiffs' vendor, Mrs. Tarrant. Further, by way of a cross-action, Mrs. Roper sued Mrs. Tarrant, her lessor, alleging that under the terms of the lease agreement, she was entitled to recover a reasonable attorney's fee if she was required to employ an attorney to enforce the lease agreement. In reply cross-defendant, Mrs. Tarrant, denied generally the allegation of the cross-action, specially denied the execution of a written agreement, and alleged that Mrs. Roper was a month-to-month tenant. The Scroggins also specially denied the existence of a written lease and alleged Mrs. Roper was holding as a month-to-month tenant. After a trial before a jury, the jury found that the defendant, Opal Roper, was in possession of the premises under a written lease, executed and delivered to her by Mrs. Tarrant. Based on the verdict the trial court entered a take nothing judgment against plaintiffs, James

Scroggins and wife, on their action for forcible entry and detainer and awarded cross-plaintiff, Opal Roper, a judgment for attorney's fees in the amount of $1,000.00 against cross-defendant, Mrs. D. J. Tarrant. Thereafter plaintiffs, James Scroggins and wife, joined by Mrs. Tarrant, filed a joint motion for judgment notwithstanding the jury's verdict and a joint motion for new trial. After their motions had been overruled, the Scroggins, as well as Mrs. Tarrant, perfected this appeal.

By their first and third points of error plaintiffs and Mrs. Tarrant contend that the trial court erred in overruling their motion for judgment notwithstanding the verdict because they contend there was no evidence to support the finding that a written lease was delivered to the defendant, Opal Roper, by their vendor, Mrs. D. J. Tarrant. We cannot agree with this proposition and the points are accordingly overruled.

■ Delivery is essential in order for a written lease to be binding and enforceable. See 35 Tex.Jur.2d Landlord and Tenant sec. 16, p. 501. A "lease" is a grant or devise of realty, usually for a term of years, and must be executed in the essential prerequisite of a deed. *Caples v. Dearborn Stove Co.,* 231 S.W.2d 669 (Tex.Civ.App.—Dallas 1950) reversed on other grounds 149 Tex. 563, 236 S.W.2d 486 (1951). In the case of deeds, no particular form of words or action is necessary to constitute delivery but manual delivery is not necessary. A deed may be delivered by words without acts, by acts without words or both by words and acts. Any act or declaration of the grantor showing an intention to give present effect to an executed conveyance is sufficient. Delivery may be proved by evidence of acts or words showing that the grantor intended to pass title, and by evidence that after execution the grantor treated and recognized the property as belonging to the grantee although possession of the deed was retained by the grantor. Delivery is a mixed question of law and fact to be determined by the jury. See 19 Tex.Jur.2d Deeds secs. 81,

83 and 89. We see no valid reason why the foregoing rules should not apply equally as well to the delivery of a written lease. Bearing in mind these rules, we will undertake to review the record in order to determine whether there is any evidence of probative force to establish delivery of a written lease by Mrs. Tarrant to Opal Roper.

■ The record reveals that in May 1972, Mrs. D. J. Tarrant was the owner and operator of a restaurant situated in Frankston, Texas. After some negotiations she and her husband agreed to lease the restaurant to Opal Roper for $250.00 per month and agreed to sell the fixtures and inventory for approximately $13,000.00. Thereafter, Mrs. Roper contacted her banker, Jeff Austin, Jr., seeking a loan to purchase the furniture, fixtures and inventory. Austin agreed to make a $9,000.00 loan provided she could obtain a written lease on the premises covering the period for repayment of the loan. Thereafter, she contacted Mrs. Tarrant and told her that in order to get a loan it would be necessary to obtain a five year lease on the restaurant premises. Mr. and Mrs. Tarrant then had a five year lease on the premises prepared by their attorney. The lease provided for monthly rent in the amount of $250.00 and contained other provisions usually found in leases, including an option to buy during the five year term for $28,000.00. A copy of the unsigned lease was delivered to Opal Roper. The lease was prepared for the signatures of Mrs. Tarrant and Mrs. Roper without the joinder of their respective husbands. An unsigned copy of the lease was offered in evidence at the trial as defendant's Exhibit D–1.

The testimony of the appellee, Opal Roper, may be summarized as follows: On the date fixed for the closing of the loan, she and Mrs. Tarrant met at the bank with Mr. Austin. Mr. Austin read the lease and said that he felt it was a good lease and, therefore, he would make the loan. She saw Mrs. Tarrant sign the lease and then pass it to her for her signature. She signed the lease. Mrs. Tarrant then gave her a bill of sale to the furniture and fixtures after which she paid Mrs. Tarrant approximately $13,000.00 for the same. She further testified that the unsigned copy of the lease offered as Exhibit D–1 was the same lease that Mrs. Tarrant signed at the bank and which she kept. She explained that the reason why she did not receive a signed copy of the lease at the loan closing was because she had left her copy at the cafe, and upon discovering the same, the parties agreed that they would meet at the bank a few days later at which time her copy would be signed. She testified that this later meeting to sign her copy never occurred. According to her testimony the entire transaction of leasing the property as well as the closing of the loan, was conducted by Mrs. Tarrant and her and that neither Mr. Roper nor Mr. Tarrant was present at the closing. Finally, Opal Roper testified she took possession on June 2, 1972, and had paid the rental every month since that time. Mr. Roper died prior to the trial.

Jeff Austin, Jr., testified that he agreed to make a loan to Mrs. Roper provided she could get a written lease on the cafe. He was later advised that the lease would be executed along with the closing of the loan at the bank. He testified that Mrs. Roper and Mrs. Tarrant came to the bank without their husbands where he read and discussed the lease with them because he wanted them to understand it. According to his testimony, when both Mrs. Tarrant and Mrs. Roper agreed to the terms of the lease and the bill of sale, he made the loan. Although he testified he did not know whether the lease was signed at the bank or not because he did not actually see them "put the ink to it," he stated that if there hadn't been a signed lease he would not have made the loan. Finally, he testified that on two occasions thereafter Mrs. Tarrant came to him threatening to break the lease because Mrs. Roper was not taking care of the building.

The witness, Sharon Reynolds, a waitress at the restaurant, also testified that Mrs. Tarrant came to the restaurant on one occasion while Mrs. Roper was away and threatened to break the lease because Mrs. Roper

had removed a door and set it on the outside of the building.

D. J. Tarrant testified that he had the written lease prepared by his attorney at the request of Mr. Roper and delivered all copies of the lease to him. He testified that they never agreed to lease the cafe for five years and had the written lease prepared only as a subterfuge in order to assist Mrs. Roper in leading the banker to believe that she had a five year written lease. Both Mr. and Mrs. Tarrant testified that the only agreement was that Mrs. Roper would lease the premises on a month-to-month basis and that they had never again seen or heard of the written lease after it was delivered to Mr. Roper. They testified that they were present at the loan closing along with Mr. and Mrs. Roper and nothing whatever was said about a written lease. In short, they denied the testimony of each and every witness who gave testimony indicating that a written lease was delivered to Mrs. Roper.

It is a well settled rule that when considering a no evidence point, the reviewing court must view the evidence in support of the jury finding in its most favorable light considering only the evidence and reasonable inferences to be drawn therefrom which support the finding and rejecting the evidence and inferences contrary to that finding. *Miller v. Riata Cadillac Co.,* 517 S.W.2d 773 (Tex.1974); *Transport Ins. Co. v. Mabra,* 487 S.W.2d 704 (Tex.1972). Upon applying the foregoing rules of law we have concluded that there was ample evidence to support the jury's finding that the lease in question was delivered. Appellants' first and third points of error are therefore overruled.

By their second point of error the plaintiffs and cross-defendant assert that there was "insufficient" evidence to support the jury's finding and, therefore, contend that the trial court erred in overruling their motion for new trial. After a careful search of the motion for new trial we fail to find any assignment of error contending that the evidence is factually insufficient to support the judgment. The cases are legion holding that a fact point must be raised in the motion for new trial in order to preserve it for appeal. Tex.R.Civ.P. 324; *Darryl v. Ford Motor Co.,* 440 S.W.2d 630, 633 (Tex.1969); *Smith v. Texas Pipeline Co.,* 455 S.W.2d 346, 351 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.). It therefore follows that their second point was not properly preserved for review.

This brings us to the controversy with regard to that part of the judgment in which the trial court awarded Opal Roper attorney's fees in the amount of $1,000.00 against cross-defendant Mrs. D. J. Tarrant and decreed that such amount was to be paid out of the funds in the registry of the court. The judgment for attorney's fees stems from the following provision in the lease:

"In the event that either party is required to employ an attorney to enforce the provisions of this Lease Agreement, the party in default shall be responsible for reasonable attorney's fees for the enforcement of this Lease Agreement."

The record reveals that after Mrs. Tarrant sold the restaurant premises to Mr. and Mrs. Scroggins, Mrs. Tarrant refused to accept further rental payments and advised Mrs. Roper to make future rental payments to the Scroggins. After the Scroggins filed this suit seeking to oust Mrs. Roper from possession, she deposited all rental payments into the registry of the court. Thereafter Mrs. Tarrant asserted no claim to these funds and concedes that such rental funds belong to the Scroggins. The Scroggins were not parties to Mrs. Roper's cross-action for attorney's fees and no judgment for attorney's fees was rendered against them. The judgment for attorney's fees was rendered only against Mrs. Tarrant. The trial court, however, ordered that the $1,000.00 judgment against Mrs. Tarrant be paid out of the rental funds which had been paid into the registry of the court.

As we view the record, Mrs. Tarrant makes no attack on the judgment rendered against her for attorney's fees. After a careful review of the joint motion for judg-

ment notwithstanding the verdict and the joint motion for new trial filed upon behalf of Mrs. Tarrant and the Scroggins, we fail to find any complaint or assignment of error wherein Mrs. Tarrant complains of the judgment rendered against her for attorney's fees. Moreover, there is no point of error complaining of the judgment for attorney's fees in the joint brief filed in behalf of the Scroggins and Mrs. Tarrant. While we gather from certain statements in the joint brief that she is dissatisfied with the judgment rendered against her for attorney's fees, the fact remains that she did not register any complaint of the judgment in this regard in her motion for new trial. In the absence of any assignment of error in cross-defendant's motion for new trial complaining of the award of attorney's fees, this court has no authority to disturb that portion of the judgment. Rule 324, Tex.R. Civ.P.; *Texas Power & Light Co. v. Cole,* 158 Tex. 495, 313 S.W.2d 524 (1958).

Under the fourth and fifth points of error, plaintiffs, James Scroggins and wife, complain of the action of the trial court in ordering the $1,000.00 judgment rendered against Mrs. D. J. Tarrant to be paid out of the rental funds paid into the registry of the court because they contend these funds were owned by them and the court was without authority to compel them to pay a judgment rendered against another party. We sustain the contention.

The proof shows that the funds in the registry of the court were the property of Mr. and Mrs. Scroggins. Mrs. Tarrant makes no contention to the contrary. Consequently that portion of the judgment ordering the Clerk of the Court to pay the sum of $1,000.00 to Opal Roper out of the registry of the court and further ordering the court costs incurred by Opal Roper to be paid out of the funds in the registry of the court is hereby reversed and deleted from the judgment. In lieu thereof, the judgment will be reformed to read as follows:

"It is hereby ordered that the Clerk of this Court pay the funds deposited into the Registry of the Court to Plaintiffs James Scroggins and wife, Mrs. James

Scroggins. It is further ordered that the judgment for attorney's fees, as well as all costs incurred by Opal Roper, be paid by cross-defendant, Mrs. D. J. Tarrant, for which execution shall issue."

In all other respects the judgment is affirmed.

Reformed and as reformed affirmed.